1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | |
|---|---|
| RIGOBERTO VARGAS CASILLAS, | 1:10-cv-00139 MJS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |
| v. | |
| TIM VIRGA, Warden, | |
| Respondent. | |

17     Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18 pursuant to 28 U.S.C. § 2254. Respondent, Tim Virga, as warden of California State Prison,

19 Sacramento is hereby substituted as the proper named respondent pursuant to Rule 25(d) of

20 the Federal Rules of Civil Procedure. Both parties have consented to Magistrate Judge

21 jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 14, 26.)

22 **I.**    **PROCEDURAL BACKGROUND**

23     Petitioner is currently in the custody of the California Department of Corrections and

24 Rehabilitation (CDCR) after pleading no contest to one count of murder. (CT[1], Vol. 2 at 383-

25 384.) Petitioner was sentenced by the Kern County Superior Court to twenty five years to life

26 in prison on January 30, 2008. (Id.)

27

28

---

[1]"CT" refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

1    Petitioner filed a direct appeal which was denied in a reasoned decision by the

2    California Court of Appeal, Fifth Appellate District on October 23, 2008. (Ex. A.) The California

3    Supreme Court denied review on January 14, 2009. (Lodged Doc. 5.)

4    On March 9, 2009, Petitioner filed a habeas petition in the Kern County Superior Court.

5    (Lodged Doc. 6) The petition was denied on May 1, 2009. (Lodged Doc. 7.) Petitioner

6    proceeded to file a petition for writ of habeas corpus with the California Supreme Court.  It

7    was denied on September 30, 2009. (Lodged Doc. 9.)

8    Petitioner filed the instant federal habeas petition on November 19, 2009. (Pet., ECF

9    No. 1.)  Petitioner raises the following three claims for relief:

10    1.) The trial court erred when it found that the police had reasonable suspicion to detain

11    the truck in which Petitioner was a passenger;

12    2.) Insufficient evidence supported the factual basis for the charge of murder; and

13    3.) Ineffective assistance of counsel.

14    Respondent filed an answer to the petition on September 2, 2010. (Answer, ECF No.

15    33.) Petitioner did not file a traverse.

16    **II.    FACTUAL BACKGROUND**[2]

17    Following the denial of his motion to suppress, Rigoberto Vargas Casillas

18    ([Petitioner]) pled no contest to one count of murder (Pen. Code, § 187) and was
     sentenced to 25 years to life in prison. [Petitioner] contends the trial court erred

19    in denying his Penal Code section 1538.5 motion to suppress evidence. We
     disagree and affirm.

20    FACTS

21    The following facts are shown by testimony at the suppression hearing.

22    In the early morning hours of July 12, 2007, sheriff's deputy Cesar

23    Ollague received information about a shooting, with one possible fatality.
     Ollague was sent to the hospital to interview one of the victims, Rafael Moreno.
     Moreno had sustained two or three gunshot wounds, including one to the head.

24    He was undergoing treatment, alert, but in pain. He was "slipping away" due to
     medication.

25    Moreno told Ollague that the incident had begun around 5:00 or 6:00

26    a.m., after he and two other victims picked up a man he knew as "Chuy" to give

27    _____

28    [2]The factual background is taken from the opinion of the state appellate court and is presumed correct.
     28 U.S.C. § 2254(e)(1).

1
2
3
4
5

him a ride. In the victims' white Ford truck, Chuy directed them to an off-white/beige colored apartment complex on H and Planz Streets that had a red Dodge Ram parked in front. When they arrived, two people with handguns got into the white Ford truck. Moreno said one of the subjects had exited a newer, possibly 2003 model, four-door, Ford F-150 truck. Moreno first described the truck as brown, then gray, then a green color similar to the color of Ollague's vest. The victims were driven to an orchard, where all three were shot. Moreno said that, after the shooting, the suspects fled in the white Ford truck. Moreno believed the brown/gray/green truck, from which one of the suspects had exited at the apartment complex, was still there.

6
7
8
9
10
11

Ollague and another deputy went to H and Planz Streets and located the apartment complex Moreno had described. They attempted to locate the truck Moreno had described, knocking on doors to inquire if anyone had seen or heard anything. Within minutes, the deputies spotted a dark gray, four-door Ford F-150 leaving the parking lot. Ollague initiated an emergency stop. The driver was female, appellant was in the passenger seat, and three children were in the extended cab. Based on this initial contact, Ollague did not believe they were involved with the crime. Ollague questioned the woman and appellant about the incident, and requested their identification. He wrote down appellant's name and that he was from Tualatin, Oregon. The detention lasted five to seven minutes.

12
13
14
15

The deputies then returned to the hospital to show Moreno photographs of the apartment complex. Moreno confirmed the complex was the one he had described, then mentioned one of the assailants was from Tualatin, Oregon. Ollague realized the individual he stopped might be a suspect. The deputies then returned to the apartment complex and located appellant, who went willingly to the sheriff's department to be questioned.

16

People v. Casillas, 2008 Cal.App.Unpub. LEXIS 9228 at *1-*3 (2008).

17

### III.    DISCUSSION

18

#### A.    Jurisdiction

19
20
21
22
23
24
25

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

26

#### B.    Legal Standard of Review

27
28

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

1    enactment.  <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484,

2    1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus,

3    it is governed by its provisions.

4         Under AEDPA, an application for a writ of habeas corpus by a person in custody under

5    a judgment of a state court may be granted only for violations of the Constitution or laws of the

6    United States. 28 U.S.C. § 2254(a); <u>Williams v. Taylor</u>, 529 U.S. at 375 n. 7 (2000). Federal

7    habeas corpus relief is available for any claim decided on the merits in state court proceedings

8    if the state court's adjudication of the claim:

9         (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established federal law, as
10        determined by the Supreme Court of the United States; or

11        (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
12        State court proceeding.

13   28 U.S.C. § 2254(d).

14        1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

15        A state court decision is "contrary to" federal law if it "applies a rule that contradicts

16   governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

17   materially indistinguishable from" a Supreme Court case, yet reaches a different result."

18   <u>Brown v. Payton</u>, 544 U.S. 133,  141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06.  "AEDPA

19   does not require state and federal courts to wait for some nearly identical factual pattern

20   before a legal rule must be applied. . . . The statue recognizes . . . that even a general

21   standard may be applied in an unreasonable manner" <u>Panetti v. Quarterman</u>, 551 U.S. 930,

22   953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law"

23   requirement "does not demand more than a 'principle' or 'general standard.'" <u>Musladin v.</u>

24   <u>Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application

25   of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions

26   must provide a governing legal principle (or principles) to the issue before the state court.

27   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an

28   "unreasonable application of" federal law only if it is "objectively unreasonable." <u>Id.</u> at 75-76,

quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2.   Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are

1  inconsistent with the holding in a prior decision of this Court." Id. at 786.  Thus, "even a strong

2  case for relief does not mean the state court's contrary conclusion was unreasonable."  Id.

3  (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves authority to issue the writ in

4  cases where there is no possibility fairminded jurists could disagree that the state court's

5  decision conflicts with this Court's precedents."  Id.  To put it yet another way:

6
7
8

> As a condition for obtaining habeas corpus relief from a federal court, a
> state prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an error
> well understood and comprehended in existing law beyond any possibility for
> fairminded disagreement.

9  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts are the

10 principal forum for asserting constitutional challenges to state convictions." Id. at 787.  It

11 follows from this consideration that § 2254(d) "complements the exhaustion requirement and

12 the doctrine of procedural bar to ensure that state proceedings are the central process, not

13 just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes,

14 433 U.S. 72, 90 (1977).

15                    3.      Prejudicial Impact of Constitutional Error

16      The prejudicial impact of any constitutional error is assessed by asking whether the

17 error had "a substantial and injurious effect or influence in determining the jury's verdict."

18 Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22

19 (2007) (holding that the Brecht standard applies whether or not the state court recognized the

20 error and reviewed it for harmlessness).  Some constitutional errors, however, do not require

21 that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310

22 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas

23 petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.

24 Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

25 not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

26 911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

27 **IV.     REVIEW OF PETITION**

28      **A.      Claim One - Search of Petitioner was Unlawful**

1

2      Petitioner asserts that the state court erred in denying his motion to suppress the

3  evidence relating to the vehicle stop in which law enforcement first saw Petitioner. Specifically,

4  Petitioner contends that the police lacked reasonable suspicion to conduct the stop. The

5  claims were presented on direct appeal to the Fifth District Court of Appeal. People v. Casillas,

6  2008 Cal.App.Unpub. LEXIS 9228 at *4-*10. The appellate court denied the claim in a

7  reasoned decision, stating:

8      II. Reasonable Suspicion

9      Appellant contends the trial court erred in finding the police had
   reasonable suspicion to detain the truck in which he was a passenger. His
10  challenge is based on two grounds: (1) the police had no reasonable suspicion
   to believe the gray truck was involved with the crime, and (2) the police had no
11  reasonable suspicion that the occupants of the truck were anything more than
   witnesses.

12      The issue before us is whether the deputy had a sufficient quantum of
13  information to establish reasonable suspicion to justify the investigatory stop at
   its inception. Reasonable suspicion of criminal activity makes it lawful to
14  temporarily detain an individual for both limited questioning and to obtain
   identification. (United States v. Brignoni-Ponce (1975) 422 U.S. 873, 881.) Such
15  temporary detention satisfies the Fourth Amendment if police can point to
   "specific, articulable facts that, considered in light of the totality of the
16  circumstances, provide some objective manifestation that the person detained
   may be involved in criminal activity." (People v Souza (1994) 9 Cal.4th 224,
17  231.) Under this objective standard, "'the facts must be such as would cause
   any reasonable police officer in a like position, drawing when appropriate on his
18  training and experience [citation], to suspect the same criminal activity and the
   same involvement by the person in question.'" (People v. Loewen (1983) 35
19  Cal.3d 117, 123.)

20      Since an investigatory stop is less intrusive to one's personal security
   than an arrest, the level of suspicion necessary for such a stop is "considerably
21  less than proof of wrongdoing by a preponderance of the evidence." (United
   States v. Sokolow (1989) 490 U.S. 1, 7.) While police are not allowed to act on
22  mere hunches, curiosity, or vague descriptions, a more particularized
   description, together with additional circumstances known to the officer, may
23  justify a detention. (In re Carlos M. (1990) 220 Cal.App.3d 372, 381-382.)

24      Appellant's argument that police had no reasonable suspicion to believe
   the gray truck was involved in the crime is unfounded. The truck was
25  substantially similar to the one that Moreno had described. One of the
   perpetrators had exited this vehicle when the crime was initiated, and thus, it
26  was used in the commission of the crime. A slight color discrepancy between the
   described vehicle and the stopped vehicle is insufficient to render the stop
27  illegal. (U.S. v Abdus-Price (D.C.Cir. 2008) 518 F.3d 926, 928.) In Abdus-Price,
   police received report of a robbery involving a Ford Crown Victoria that was tan
28  on one side, black on top, and had smoked-out windows. Two blocks from
   where the robbery occurred, the officers pulled over a dark blue Crown Victoria

with tinted windows and a white driver's-side rear door. The slight color discrepancy was insufficient to challenge the legality of the stop because of the remaining points of similarity and the vehicle's vicinity to the crime scene. (Id. at pp. 930-931.) The court explained a reasonable officer would infer that the victim of an armed robbery might not exercise perfect recall in describing the color of a getaway car. (Id. at p. 931.)

Here, when interviewed, the victim was under the effects of medication for a gunshot wound to the head. He had recently experienced a traumatic event. Under these circumstances, it is not unreasonable to think he could have trouble describing the precise color of a vehicle. This was not a "shifting description," as appellant argues, but a description of three colors which were consistently dark. The stopped vehicle matched one of those three colors. Not only did Moreno recall the vehicle's dark color, he also provided the make, model, and year, all of which matched the stopped vehicle. He precisely described the location he believed the vehicle would be found, including the color of the apartment complex and that there was a red Dodge Ram parked in front. The deputy had ample remaining points of similarity and a particularized description on which to base a reasonable suspicion.

Appellant asserts that because Moreno said the perpetrators had fled in the victims' white Ford truck, the police had no reason to believe someone would be located in a gray truck. However, it is not so unreasonable to think the perpetrator would return to the apartment complex from whence he came.

Appellant's second contention, that the officer went to the apartment complex in search of witnesses, not suspects, is a mischaracterization of the deputy's testimony. Ollague specifically testified his purpose for locating the apartment complex was to search for the truck the victim had described. Appellant also points to Ollague's testimony that his police report indicates he released the appellant because he was looking for a different colored vehicle. However, in evaluating the reasonableness of an investigatory stop, an officer's action must be justified at its inception. (United States v. Sharpe (1985) 470 U.S. 675, 682.) Ollague did not initially stop the vehicle for suspicionless purposes, but did so because it matched the general description of a vehicle involved in the crime. Only after he stopped the vehicle in question and discovered the occupants to include a female and three children was the deputy's suspicion dispelled. "If the facts known to the officer at the time of the detention make the detention objectively reasonable, the officer's subjective intent will not vitiate the detention." (Giovanni B. v. Superior Court (2007) 152 Cal.App.4th 312, 320.) Therefore, appellant's attempt to liken the detention to a random detention for the purpose of seeking witnesses is erroneous, as is pointing to the contents of the deputy's subsequent report of the incident.

In U.S. v. Marxen (6th Cir. 2005) 410 F.3d 326, a witness provided police information about the make, model, color, and license number of a getaway car used in a robbery, but no description of the driver. The investigatory stop of the defendant's vehicle was held valid because police had reasonable suspicion to believe it was used in the robbery, and the stop could lead to the discovery of evidence. (Id. at pp. 331-332.) The stop was lawful even though there was no reasonable suspicion that the driver or owner of the vehicle was involved. (Ibid.) In this case, Ollague had reasonable suspicion to stop the vehicle because it matched the description of the vehicle involved with the shootings. The basis of his suspicion was sufficient without regard to the vehicle's occupants.

1
2
3
4
5

       This was an ongoing crime investigation involving a carjacking and murder. As the perpetrators had arrived and fled by vehicle, there was a high likelihood they would leave the vicinity and remain at large. The police detained the vehicle shortly after the shootings based on the victim's accurate description of the vehicle and the location where it could be found. "A brief stop and detention at the earliest opportunity after the suspicion arose is fully consistent with the principles of the Fourth Amendment." (United States v. Hensley (1985) 469 U.S. 221, 234.) The totality of the circumstances in this case convinces us the deputy had reasonable suspicion to detain under the objective standard.

6
7
8
9

       The trial court was correct in finding the existence of reasonable suspicion to justify the stop and in denying appellant's motion to suppress. As a result of this holding, we need not and do not address appellant's additional argument that all evidence obtained as the result of the stop must be suppressed and that appellant must be given the opportunity to withdraw his guilty plea.

10

People v. Casillas, 2008 Cal. App. Unpub. LEXIS 9228, *4-*10.

11
12
13

    Petitioner then filed for review with the California Supreme Court.  Review was denied. The California Supreme Court is presumed to have denied the claim for the same reasons stated by the lower court.  Ylst, 501 U.S. at 803.

14
15
16

    Respondent asserts that based on Petitioner's full and fair opportunity to litigate his Fourth Amendment claim in state court, this Court should deny the federal habeas petition. For the reasons set forth below, the Court agrees with Respondent's assertion.

17
18
19
20
21
22
23
24

    It is well-settled that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unreasonable search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). Stone is a "categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings." Woolery v. Arave, 8 F.3d 1325, 1328 (9th Cir. 1993). If a petitioner fails to show that the state court did not offer him a full and fair opportunity to litigate his fourth amendment claim, it "must be dismissed." Id.

25
26
27
28

    In determining whether Stone bars a petitioner's Fourth Amendment claims, the relevant inquiry is whether a petitioner had the opportunity to litigate his claims, not whether he did, in fact, do so, or whether the claims were correctly decided. See, e.g., Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.

1    1990) ("Whether or not [the petitioner] did in fact litigate this fourth amendment claim in state

2    court, he did have the opportunity to do so"). The extent to which the claim was briefed before

3    and addressed by the state trial and appellate courts also may be considered in assessing the

4    fullness and fairness of the opportunity which was provided to litigate the relevant claim. See

5    Terrovona v. Kincheloe, 912 F.2d 1176, 1178-79 (9th Cir. 1990); see also Moormann v.

6    Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005).

7         The policy behind the Stone Court's analysis is that the exclusionary rule is applied to

8    stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However,

9    excluding evidence that is not untrustworthy creates a windfall to the defendant at a

10   substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus,

11   the Ninth Circuit has described the rationale for this rule by saying:

12            The holding is grounded in the Court's conclusion that in cases where a
              petitioner's Fourth Amendment claim has been adequately litigated in state
13            court, enforcing the exclusionary rule through writs of habeas corpus would not
              further the deterrent and educative purposes of the rule to an extent sufficient
14            to counter the negative effect such a policy would have on the interests of
              judicial efficiency, comity and federalism.
15
     Woolery, 8 F.3d at 1326; see also Stone, 428 U.S. at 493-494.
16
          Here, as described by the appellate court, Petitioner briefed and argued his California
17
     Penal Code § 1538.5 suppression motion at trial, and the trial court gave full consideration to
18
     the motion and stated on the record its reasons for denying the motion. He presented the
19
     issue to the California Court of Appeal, which issued a reasoned denial of the claim, and the
20
     California Supreme Court affirmed the Court of Appeal upon review. Although the state courts
21
     ruled against Petitioner, the record reflects that petitioner was afforded a full and fair
22
     opportunity to litigate his Fourth Amendment claims. Accordingly, the claims are not
23
     cognizable on federal habeas review. See Stone, 428 U.S. at 481-82. Petitioner's first claim
24
     for habeas corpus relief lacks merit and must be denied.
25
          **B.    Claim Two: Insufficient Factual Basis to Support No Contest Plea**
26
          Petitioner contends that the factual basis for the plea was insufficient to support his no
27
     contest plea.
28

1    Petitioner has failed to establish that the state court's decision was contrary to, or

2    involved an unreasonable application of, federal law. As such, the Court will recommend that

3    Petitioner's claim be denied.

4    Petitioner pled no contest pursuant to a written plea agreement which the trial court

5    accepted. Where a defendant pleads guilty, review is limited to whether the underlying plea

6    was counseled and voluntary. See United States v. Broce, 488 U.S. 563, 569 (1989); Tollett

7    v. Henderson, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted

8    in open court that he is in fact guilty of the offense of which he is charged, he may not

9    thereafter raise independent claims relating to the deprivation of constitutional rights that

10   occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent

11   character of the guilty plea by showing that the advice he received from counsel was

12   [deficient.]"). Here, Petitioner does not challenge that the plea was knowingly, intelligently, and

13   voluntarily made, only that the factual basis was insufficient.

14   Even if the factual basis was insufficient, it would nonetheless not give rise to a

15   Constitutional violation. Federal Rule of Criminal Procedure 11 and California Penal Code §

16   1192.5 require that there be a factual basis for the plea. Neither rule of procedure, however,

17   is "constitutionally mandated." McCarthy v. U.S., 394 U.S. 459, 465,89 S. Ct. 1166, 22 L. Ed.

18   2d 418 (1969). If a plea is otherwise intelligent and voluntary, a state court is not required by

19   the Constitution to establish a factual basis. See North Carolina v. Alford, 400 U.S. 25, 37-38,

20   (1970) ("Thus, while most pleas of guilty consist of both a waiver of trial and an express

21   admission of guilt, the later element is not a constitutional requisite to the imposition of criminal

22   penalty. An individual accused of crime may voluntarily, knowingly, and understandingly

23   consent to the imposition of a prison sentence even if he is unwilling or unable to admit his

24   participation in the acts constituting the crime."); Rodriguez v. Ricketts, 777 F.2d 527, 527-28

25   (9th Cir. 1985) (per curiam) (rejecting petitioner's claim that he should be granted habeas

26   corpus relief because his guilty plea was not supported by a factual basis on the grounds that,

27   although a factual basis is required under Arizona law, "relief under section 2254(a) can be

28   granted only for a violation of the United States Constitution, a federal statute, or a treaty" and

1   "the due process clause does not impose on a state court the duty to establish a factual basis

2   for a guilty plea absent special circumstances").

3        Thus, Petitioner's claim that his rights were violated based on the allegedly insufficient

4   factual basis is not a valid Constitutional claim, because no right to a sufficient factual basis

5   exists under the United States Constitution. Regardless, even if a sufficient factual basis was

6   required, the state court on habeas review found that the facts supported a murder conviction

7   based on the felony murder doctrine or accomplice liability. Petitioner asserts that he did not

8   know that the other individuals planned on shooting and killing the victims, and was not

9   present when the shooting occurred. Even if Petitioner's allegations are correct, the trial court

10  found that sufficient evidence existed that Petitioner either committed the robbery or kidnaping

11  of the victims. The fact that the murder occurred during the commission of the felony,

12  regardless of Petitioner's knowledge or intent, is sufficient to create liability under the felony

13  murder rule. Petitioner is not entitled to relief and it is recommenced that the claim is denied.

14       **C.**    **Claim Three: Ineffective Assistance of Counsel**

15       Petitioner presents two claims of ineffective assistance of counsel. First, Petitioner

16  claimed trial counsel was ineffective for encouraging him to enter a no contest plea knowing

17  there was no factual basis to support the plea. Second, Petitioner also alleged ineffective

18  assistance of appellate counsel for failing to raise any of the claims in the state habeas petition

19  on direct appeal.

20       1.    Relevant State Court Decision

21       The claim was presented by way of a petition for writ of habeas corpus to the Kern

22  County Superior Court. The court denied the claim in a reasoned decision, stating:

23           [Petitioner] contends that he received ineffective assistance of both trial
             and appellate counsel. He claims that he was scared and pled to one count of
24           first degree murder even though he did not fire the weapon and was not present
             at the weapon and was not present at the murder. He takes his appellate
25           counsel to task for failure to raise the issue on appeal.

26           Petitioner is one of four co-defendants in this case. In the early morning
             of July 12, 2007, Jose Crispin, Rafael Moreno, and Arturo were driving through
27           Bakersfield. Petitioner admitted to knowing that the three were going to transport
             five to six pounds of Methamphetamine from Arizona to Washington State.
28           Petitioner, on the pretext of needing a ride lured the three to an apartment

complex where three defendants with guns ordered Crispin, Moreno and Avila out of their truck and into another vehicle.

The three perpetrators were Juan and Augustina Burboa, and Carlos Chavez. Petitioner was in the apartment on 1116 H Street. Moreno, Crispin, and Aviles were driven to an orchard where the were robbed of money. Crispin was shot in the head and died instantly. Moreno and Aviles were also shot but managed to escape and obtain assistance. They were later interviewed at Kern Medical Center. The three perpetrators returned to Home Depot to discuss how to distribute the drugs and money. Petitioner remained in the apartment complex being  an intermediary with the other three co-defendants through cell phone conversations.

Petitioner went to the police station voluntarily. He was later Mirandized in Spanish. After indicating that he understood his rights, he gave his version of events. He knew that Moreno, Aviles and Crispin were going to transport drugs from Arizona to Washington, and he planned to lure them to the apartment complex on the pretext of giving him a ride to Oregon. Petitioner along with the other co-defendants planned to rob the victims of money and drugs and sell the drugs. Petitioner expected to receive from $5,000.00 to $10,000.00 from the sale. Petitioner denied participation in the murder.

Carlos Chavez stored the victim's truck in his garage and let Juan and Agustina Burboa use another vehicle until things cooled down. The sheriff conducted a traffic stop wherein petitioner was riding as a passenger with Agustina Burboa, but has no reason to detain them prior the petitioner's arrest. Later through informants and petitioner's statements, the police were able to locate the victims' truck and arrest Chavez.

To prevail in a claim for ineffectiveness of counsel, petitioner must pass a two-part test. He must show that counsel's representation fell below professional norms, and but for that conduct, petitioner suffered prejudice- that absent such ineffectiveness and prejudice, the outcome would have been different. This means that petitioner would have been convicted of a lesser offense or acquitted.

The trial judge found that petitioner voluntarily, knowingly, and intelligently pled nolo contendre to one count of first degree murder exchange for dismissal of all other counts and enhancements. The crime reports and preliminary hearing were the documents used for a factual basis for the plea. Murder perpetrated in commission fo a robbery calls for application of the felony murder doctrine. The underlying felonies must be independent of the murder. (People v. Tafoya (2007) 42 Cal.4th 147, 171.) As in Tafoya, there was planning involved to rob the victims of money and drugs. In the instant case, we have both robbery and kidnaping. Even in the absence of the felony murder doctrine, accomplice liability exists where there is planning to commit robbery, and murder results. (People v. Sirginano (1974) 42 Cal.App.3d 794, 801.) It is the legislative intent to punish murders committed in the perpetration of robbery as first degree murders to deter murders committed during a robbery. (Id.) Petitioner, along with the other co-defendants planned this crime prior to luring the victims to the apartment complex.

Petitioner spoke with the other co-defendants during and after the commission of the robbery and murder. Finally, petitioner received the benefit of his bargain because he faced more severe punishment had he been

1   convicted of the other eight counts the People dismissed as a condition of the
    nolo contendre plea.

2
        Petitioner fails to show prejudice at the hands of his counsel. All
3   proceedings were conducted in Spanish. (Strickland v. Wahsington (1984) 466
    U.S. 668, 694.) Prejudice must be a demonstrable reality, not a figment of
4   petitioner's imagination. (In re Sixto (1989) 48 Cal.3d 1247, 1257.)

5       As for appellate counsel, appellate counsel need not raise all possible
    theories, but those he/she feels have merit. (In re Robbins (1998) 18 Cal.4th
6   770, 777 810, 812.) For reasons unknown to this court, the appellate opinion did
    not address the question of whether petitioner should be permitted to withdraw
7   his guilty plea, even though his appellate counsel raised that issue in her
    appellate brief. Given the bargain petitioner struck with the People, and the
8   scrupulous adherence to his constitutional rights be the trial court it is doubtful
    that such a claim would be successful.

9
        This court is unaware of any motion by petitioner to withdraw his guilty
10  plea.

11      On the basis of the foregoing, the petition for writ of habeas corpus is
    accordingly denied because he fails to satisfy his burden of proof to state a
12  prima facie case for relief. (People v. Romero (1994) 8 Cal.4th 728, 737.)

13  (Lodged Doc. 7.)

14          2.    Legal Standard for Ineffective Trial Counsel

15      The law governing ineffective assistance of counsel claims is clearly established for the

16  purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe,

17  151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective

18  assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466

19  U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.

20  1994). First, the petitioner must show that counsel's performance was deficient, requiring a

21  showing that counsel made errors so serious that he or she was not functioning as the

22  "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner

23  must show that counsel's representation fell below an objective standard of reasonableness,

24  and must identify counsel's alleged acts or omissions that were not the result of reasonable

25  professional judgment considering the circumstances. Id. at 688; United States v.

26  Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's

27  performance is highly deferential. A court indulges a strong presumption that counsel's

28  conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S.

1   at 687; see also, Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

2       Second, the petitioner must demonstrate that "there is a reasonable probability that, but
3   for counsel's unprofessional errors, the result ... would have been different," Strickland, 466
4   U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive
5   defendant of a fair trial, one whose result is reliable. Id. at 687. The Court must evaluate
6   whether the entire trial was fundamentally unfair or unreliable because of counsel's
7   ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d
8   1456, 1461 (9th Cir. 1994).

9       A court need not determine whether counsel's performance was deficient before
10  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.
11  Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any
12  deficiency that does not result in prejudice must necessarily fail. However, there are certain
13  instances which are legally presumed to result in prejudice, e.g., where there has been an
14  actual or constructive denial of the assistance of counsel or where the State has interfered
15  with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25
16  (1984).

17      As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard
18  for ineffective assistance of counsel in federal habeas is extremely difficult:

19          The pivotal question is whether the state court's application of the
20      Strickland standard was unreasonable. This is different from asking whether
        defense counsel's performance fell below Strickland's standard. Were that the
21      inquiry, the analysis would be no different than if, for example, this Court were
        adjudicating a Strickland claim on direct review of a criminal conviction in a
        United States district court. Under AEDPA, though, it is a necessary premise
22      that the two questions are different. For purposes of § 2254(d)(1), "an
        unreasonable application of federal law is different from an incorrect application
23      of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A
        state court must be granted a deference and latitude that are not in operation
24      when the case involves review under the Strickland standard itself.

25          A state court's determination that a claim lacks merit precludes federal
        habeas relief so long as "fairminded jurists could disagree" on the correctness
26      of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.
        Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained,
27      "[E]valuating whether a rule application was unreasonable requires considering
        the rule's specificity. The more general the rule, the more leeway courts have in
28      reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an

unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Id.</u> at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

        3.   <u>Analysis</u>

The state court's determination that Petitioner has not made a sufficient showing that he was prejudiced by the actions of defense counsel is reasonable. In order to demonstrate prejudice, Petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," <u>Strickland</u>, 466 U.S. at 694. While Petitioner criticizes the conduct of defense counsel, it is based on his continued assertion that there was no factual basis for the crime. As described above, the state court found that there was a factual basis for the murder charge based on the felony murder doctrine or accomplice liability.

The Supreme Court recently described the standard for ineffective assistance of counsel at the plea bargaining stage in <u>Premo v. Moore</u>, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011). Effectively, a court may only grant relief if there is no reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard. In reviewing clams relating to ineffective assistance of counsel at the plea bargaining stage, even further deference should be provided:

There are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and those, like this one, where a plea was entered even before the prosecution decided upon all of the charges. A trial provides the full written record and factual background that serve to limit and clarify some of the choices counsel made. Still, hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed. See Richter, ante, at 18.

Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial or, as in this case, even before the prosecution decided on the charges. The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

Premo, 131 S. Ct. at 745-46.

In light of the extreme level of deference that this Court must extend, it cannot find the state court's determination to have been an unreasonable application of federal law in determining that defense counsel's representation was at least minimally effective and did not prejudice Petitioner. See Premo, 131 S. Ct. at 745-46. Petitioner plead guilty to first degree murder.  Petitioner was also potentially culpable of other offenses relating to the burglary and kidnaping. Accordingly, taking the plea as to the murder may have prevented Petitioner from being charged with and found guilty of other crimes at trial.

In summary, this Court must determine if "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Premo, 131 S. Ct. at 740. The state court has presented a reasonable argument as to why Petitioner's counsel was not ineffective as there was a sufficient factual basis for the plea. Accordingly, federal habeas relief is not warranted as to this claim.

### 4.   Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for not raising the same claim, that there was not sufficient evidence to convict Petitioner of murder. (Pet. at 41.)

Where the challenge is to the effective assistance of appellate counsel, the Strickland standard applies in the same manner as claims of ineffective assistance of trial counsel. Smith

v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000). It is well settled that an attorney cannot be ineffective for failing to take a futile or meritless action. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel.") (citations omitted); Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.") (citation omitted); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (same). Moreover, in Smith, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim. Smith v. Robbins, 528 U.S. at 288. Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal. Id.

### 5.    Analysis

Petitioner argues that appellate counsel was ineffective for not also arguing that trial counsel was ineffective for allowing Petitioner to plea guilty when there was insufficient evidence to convict him of murder. The claim lacks merit. As explained earlier, there was sufficient evidence of Petitioner's guilt. Furthermore, appellate counsel's failure to include such a claim was not unreasonable, as the claim was not likely meritorious.  Accordingly, the Court finds that the California court's rejection of Petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

## V.    CONCLUSION

Petitioner is not entitled to relief as to any of the claims, and the petition for writ of habeas corpus is hereby DENIED.

## VI.    CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

(a) In a habeas corpus proceeding or a proceeding under section 2255 before

a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(a)   (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The Petition for Writ of Habeas Corpus is DENIED

3) The Clerk of Court is DIRECTED to enter judgment and close the case; and

4) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: ____October 24, 2012____        /s/ *Michael J. Seng*

UNITED STATES MAGISTRATE JUDGE